UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
VINCENT M. FAZZARI,

        Plaintiff,

    - against -

COHEN, PONTANI, LIEBERMAN, & PAVANE, LLP,
COZEN O'CONNOR P.C., THOMAS C. PONTANI,
LANCE J. LIEBERMAN, MARTIN B. PAVANE,
THOMAS LANGER and EDWARD M. WEISZ,

        Defendants.
----------------------------------------X

**MEMORANDUM AND ORDER**

14 Civ. 6549 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Vincent Fazzari, an experienced attorney appearing pro se, brings this action against the inactive law firm Cohen, Pontani, Lieberman & Pavane LLP ("CPLP"), former CPLP equity partners Martin Pavane, Thomas Pontani, Lance Lieberman, Thomas Langer, and Edward Weisz (collectively, "the partners" or "the CPLP equity partners," and, along with CPLP, "the CPLP defendants"), and the law firm Cozen O'Connor ("Cozen"), claiming that he was discharged on account of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 et seq., and the New York City Human Rights Law ("NYCHRL"). Alternatively, Fazzari claims that he was discharged on the basis of a perceived disability in violation of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. 12101, et seq., the NYSHRL, and the NYCHRL.

The CPLP defendants and Cozen each moved for summary judgment on April 12, 2018, asserting that no reasonable jury could find for Fazzari on any of his claims. For the reasons stated below, the Court grants defendants' motions for summary judgment as to plaintiff's ADEA, ADA, and NYSHRL claims and dismisses without prejudice plaintiff's NYCHRL claims.

## I. PROCEDURAL HISTORY

Given Mr. Fazzari's current pro se status and the inordinate amount of time and attention that the Court has already devoted to this single-plaintiff employment action, a more extensive discussion of the procedural history than typical is warranted. Fazzari filed the complaint in this action through his then-counsel Frumkin & Hunter LLP on August 15, 2014. See Compl., ECF No. 1. The operative amended complaint ("AC") was subsequently filed on October 2, 2014. See Am. Compl., ECF No. 14. At the initial pretrial conference held on March 24, 2015, the parties agreed that they would need less than six months to complete discovery.

Nearly 16 months and two extensions of the discovery period later, the parties had yet to schedule a single fact deposition, and Frumkin & Hunter filed a motion to withdraw from the case, which Fazzari opposed under seal. Mot. to Withdraw, July 6,

2016, ECF No. 63. Endeavoring to resolve the dispute and move the case forward, the Court held an ex parte conference with Fazzari and his counsel on September 8, to no avail. Finding the relationship beyond repair, the Court granted the motion to withdraw on October 19, 2016 and stayed the case for 60 days to give Fazzari an opportunity to retain new counsel. See Order, ECF No. 67. After receiving a 30-day extension of the stay, Fazzari reported that he had been unable to secure representation and would be proceeding pro se. See Feb. 2, 2017 Ct. Conf. Tr. at 2:22-3:2, ECF No. 79.

Given the significant delay caused by Frumkin's withdrawal from the case and the pace at which discovery had progressed to date, the Court took an active role in facilitating the scheduling of depositions, setting a June 30, 2017 deadline for their completion. Id. at 12:5-24:19. On June 30, the Court received a last-minute request from Fazzari for another extension of time to complete discovery. See ECF No. 92. The Court reluctantly granted the request, cautioning the parties that they "should proceed on the assumption that no further extensions of the deadline will be granted." Order, July 13, 2017, ECF No. 98. Nevertheless, the Court continued to indulge Fazzari's subsequent requests and granted him three more extensions of time and a total of six additional months to complete discovery. See Order, Sept. 7, 2017, ECF No. 119; Oct.

11, 2017 Ct. Conf. Tr. at 13:8–14:11, ECF No. 128; Order, Dec. 5, 2017, ECF No. 141.

The protraction of the discovery period can largely be ascribed to plaintiff's intransigence with respect to the production of documents he believed were relevant and in the possession, custody, or control of defendants or third-parties. For example, throughout discovery plaintiff was unwilling or unable to accept that certain hard copy documents had been destroyed by Hurricane Sandy, or in the ordinary course as CPLP wound down its operations as an active law firm. He also repeatedly sought information about entirely unrelated employment actions maintained against CPLP or its partners (including a gender discrimination case filed by a former employee in 2003, eight years prior to the adverse employment action in this litigation). The Court addressed these issues, and many others, repeatedly and attentively and with a tolerance only accorded to plaintiff because he was representing himself.

The final month of the discovery period is illustrative of the lengths to which this Court went to accommodate plaintiff's unceasing requests for irrelevant or non-existent discovery material. From mid-December 2017 through the end of discovery, the Court (1) carefully scrutinized Fazzari's proposed topics for two belated 30(b)(6) depositions (none of which justified a grant of leave from the Court), see Order, ECF No. 154, (2)

entertained plaintiff's re-request for the production of every category of document listed in a prior request for production (despite an absence of any showing that defendants had failed to produce responsive documents that were in their possession, custody or control), see Order, ECF No. 163, (3) addressed plaintiff's last-minute request to depose and compel production of documents in the possession of CPLP's off-site storage facility (even though plaintiff had been in possession of the facility's address and contact information for approximately one year prior to the close of discovery), see id., and (4) conducted a thorough in camera review of documents listed in CPLP's privilege log (all of which were properly withheld as privileged), see Order, ECF No. 164. The Court further reconsidered all but one of these decisions at plaintiff's behest.[1]

In sum, this Court has bent over backwards to afford plaintiff every possible courtesy and a degree of latitude far exceeding that which was necessary given his status as an experienced litigator. See Harbulak v. Suffolk Cty., 654 F.2d 194, 198 (2d Cir. 1981) ("[Pro se plaintiff] is a lawyer and, therefore, cannot claim the special consideration which the courts customarily grant to pro se parties."); Glatzer v.

---

[1]    This was in keeping with plaintiff's customary practice of requesting reconsideration of nearly every decision made by the Court, no matter its merits or import.    See, e.g., Pl.'s Letter, July 12, 2018, ECF No. 226 (requesting reconsideration of the Court's order that all future communications from plaintiff to the Court be in writing, not by telephone).

Barone, 614 F. Supp. 2d 450, 451 n.1 (S.D.N.Y. 2009). The Court's indulgence of Fazzari's all-but-the-kitchen-sink approach, however, was not without its limits. After disposing of plaintiff's final blunderbuss requests for additional depositions and substantial document production (all of which were duplicative and/or untimely made), discovery closed on January 15, 2018 and the Court issued a scheduling order pursuant to which defendants filed the pending motions for summary judgment on April 12, 2018.

Plaintiff's failure to comply with court-ordered deadlines continued beyond the conclusion of the discovery period. Fazzari's opposition briefs were due to be filed on May 29, 2018, or 45 days after the filing of the motions themselves. The Court granted him two 10-day extensions, the second of which was accompanied by a clear directive that no further requests would be entertained. In direct violation of this order, Fazzari made a third request for an extension on June 18. The Court declined to rule on the request or foreshadow the consequences of the extension that plaintiff was effectively granting himself. Fazzari then proceeded to miss his own deadline, file a fourth request for an extension, afford himself another deadline, and, astonishingly, miss that as well before filing a fifth and final request for additional time. On June 29, 2018 – 71 days after the filing of the pending motions –

Fazzari filed his papers in opposition. The pending motions were fully briefed after defendants replied to Fazzari's opposition on July 25, 2018.[2]

There was no oral argument held on either motion. Fazzari requested a 60-day adjournment shortly before the date for oral argument (set almost 60 days earlier), citing a landlord-tenant dispute that did not, in fact, preclude him from attending on the long-standing date for oral argument in this case. The request was denied for the reasons stated in the Court's letter of February 25, 2019 and plaintiff decided to forego oral argument rather than appear. <u>See</u> ECF Nos. 242 and 246.

## II.  <u>LOCAL RULE 56.1 STATEMENTS</u>

Before providing the factual background of the case, the Court is compelled to address plaintiff's adherence to Local Rule 56.1. Local Rule 56.1 requires that a party moving for summary judgment submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," Local R. 56.1(a), and for the party opposing summary judgment to submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." Local R. 56.1(b). "Each statement by the movant

_____

[2]  Although the Court is certainly sympathetic to defendants' position that their motions should be considered unopposed as a result of plaintiff's persistent tardiness, this Court is well aware of and respects the Second Circuit's preference for decisions on the merits rather than by default. <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95 (2d Cir. 1993).

or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local R. 56.1(d). These rules governing summary judgment – simple to understand and easy to apply - are not mere procedural afterthoughts; they "are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of hunting through voluminous records without guidance from the parties." <u>N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.</u>, 426 F.3d 640, 649 (2d Cir. 2005) (internal quotation marks omitted).

Inexcusably, Fazzari, an experienced litigator, fails to play by the rules.[3] As an initial matter, Fazzari prefaces both of his responses with frivolous motions to strike defendants' 56.1 statements in their entirety on the grounds that (1) defendant Pavane did not execute his deposition transcript, <u>see</u> Decl. of Vincent Fazzari in Supp. of Pl.'s Opp. ("Fazzari Decl.") ¶ 103, ECF No. 217, and (2) Fazzari never worked for defendants Lieberman, Langer, or Weisz, <u>id.</u> ¶ 104. <u>See</u> Pl.'s Response to CPLP Defendants' Local R. 56.1 Stmt. ("CPLP 56.1 Stmt.") at 2, ECF No. 213; Pl.'s Response to Cozen's Local R.

---

[3]    Of course, even non-attorney <u>pro se</u> litigants are "not excused from meeting the requirements of Local Rule 56.1." <u>S.E.C. v. Tecumseh Holdings Corp.</u>, 765 F. Supp. 2d 340, 344 n.4 (S.D.N.Y. 2011).

56.1 Stmt. ("Cozen 56.1 Stmt.") at 1, ECF No. 214.[4]   Neither

argument has merit.   Pavane is not required by the federal rules

to execute his original deposition transcript.   <u>See</u> <u>Dore v.</u>

<u>Wormley</u>, 690 F. Supp. 2d 176, 178 n.2 (S.D.N.Y. 2010).   With

respect to the second ground, the Court can divine no rationale

for striking defendants' entire 56.1 statements simply because

some of the cited testimony came from the depositions of CPLP

partners that were not his direct supervisors; each CPLP partner

plainly has personal knowledge of matters central to the

resolution of this case, which is presumably why plaintiff

deposed them in the first place.

Turning to the adequacy of Fazzari's paragraph-by-paragraph

rebuttals, it is clear that Fazzari has made little effort to

comply with the letter or spirit of the local rules.   For one,

his rebuttals are chock-full of baseless and/or flippant denials

of factual assertions that he either cannot seriously dispute or

admits elsewhere.   A particularly egregious example is Fazzari's

response to defendants' assertion that Fazzari was 65 years of

age at the time of his termination, in which he disputes the

assertion and counters that he was actually "less than 7 weeks

---

[4]     To his credit, Fazzari properly reproduced defendants' statements of
undisputed fact in his 56.1 responses in accordance with the Court's
Individual Rules of Practice.   As such, all citations to "CPLP 56.1 Stmt."
and "Cozen 56.1 Stmt." refer to both defendants' statement of fact and
plaintiff's response to that asserted fact.   The Court's citations to the
56.1 statements also incorporate by reference the documents and testimony
cited therein.

from reaching 66." CPLP 56.1 Stmt. ¶ 59. More broadly, Fazzari frequently eschews citation to admissible evidence in favor of conclusory denials, meritless objections, and reflexive requests for additional discovery or adverse inferences. "Responses of this nature, which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact." Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 458 (S.D.N.Y. 2011) (citing cases); see also Feis v. United States, 394 F. App'x 797, 799-800 (2d Cir. 2010) (summary order).

The Court is, however, mindful that "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and [that] Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001). As a consequence, rather than "streamlin[ing] the consideration of [the pending] summary judgment motions" as the local rule intended, id., the net effect of plaintiff's deficient submissions is to impose upon the Court the added burden of combing through the record to assure itself that the asserted facts are supported by admissible evidence. Accordingly, where the Court herein relies on uncontroverted or

improperly controverted paragraphs in defendants' 56.1 statements, it does so only where the record duly supports defendants' contentions.[5]

Finally, peppered throughout his 56.1 responses and elsewhere in his opposition filings, plaintiff's myriad requests for continuances and adverse inferences are duplicative of prior discovery disputes and easily rejected by the Court. Federal Rule of Civil Procedure 56(d), which gives courts discretion to allow additional discovery where a nonmovant demonstrates "that, for specified reasons, it cannot present facts essential to justify its opposition,"[6] only "applies to summary judgment

---

[5]    The Court overrules all of plaintiff's objections to the admissibility of the evidence cited in support of defendants' 56.1 statements.   "As a general rule, the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997) (quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 175–76 (5th Cir. 1990)).    Addressing each category of objection in turn, none of the statements that Fazzari objects to as hearsay are offered for the truth of the matters asserted.   See CPLP 56.1 Stmt. ¶¶ 9, 13, 17; Cozen's 56.1 Stmt. ¶ 18.   Fazzari's relevance and materiality objections go to the weight of the evidence, not its admissibility.   See CPLP 56.1 Stmt. ¶¶ 37, 39, 40; Cozen's 56.1 Stmt. ¶¶ 20, 71, 73, 74.   Fazzari's claims that cited evidence lacks support, proper foundation, or personal knowledge are themselves unfounded and, in any event, the Court reiterates that it will only rely on asserted facts that it deems sufficiently supported by the record.   See CPLP 56.1 Stmt. ¶¶ 9, 13, 17, 51–53; Cozen 56.1 Stmt. ¶¶ 18, 29, 39.   With respect to Fazzari's objection to a declaration submitted by Martin Pavane [ECF No. 189] as a "litigation generated document," the Court will rely upon it just as it relies upon plaintiff's own declarations filed in support of his oppositions.   See Fed. R. Civ. P. 56(c)(4).   Finally, where Fazzari fails to state the grounds for his objection and the Court is unable to discern from the context precisely what he complains of, we disregard the objection.   See United States v. Del Llano, 354 F.2d 844, 847 (2d Cir. 1965); United States v. Hutcher, 622 F.2d 1083, 1087 (2d Cir. 1980).

[6]    The current Rule 56(d) is substantially identical to former Rule 56(f). See Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)").

motions made before discovery is concluded," <u>Johnson v. Goord</u>, 487 F. Supp. 2d 377, 403 (S.D.N.Y. 2007), <u>aff'd</u>, 305 F. App'x 815 (2d Cir. 2009), and cannot be used to circumvent prior discovery orders or make new requests for discovery that the nonmovant had every opportunity to take prior to the expiration of the discovery period, as Fazzari endeavors to do here.[7]  <u>See also</u> <u>Lugo v. Shinseki</u>, No. 06 Civ. 13187 (LAK/GWG), 2010 WL 1993065, at *16 (S.D.N.Y. May 19, 2010); <u>McAllister v. New York City Police Dep't</u>, 49 F. Supp. 2d 688, 696 n.5 (S.D.N.Y. 1999).

Fazzari's rote requests for adverse inferences, the vast majority of which are copied and pasted throughout his 56.1

---

[7]     Even if Fazzari was not simply rehashing discovery issues that have been resolved many times over during the discovery period, a party invoking Rule 56(d) must submit an affidavit showing "(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." <u>Gurary v. Winehouse</u>, 190 F.3d 37, 43–44 (2d Cir. 1999) (internal citation omitted).  The failure to do so "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." <u>Paddington Partners v. Bouchard</u>, 34 F.3d 1132, 1137 (2d Cir. 1994) (internal quotation marks omitted).  Plaintiff's requests for additional discovery primarily appear in unsworn submissions to the Court, and the few requests that are included in Fazzari's sworn declaration do not provide an adequate explanation of precisely what efforts were made to obtain the sought-after facts, or how he would now obtain such facts given his inability to unearth them during the nearly three years of discovery he has already taken in this case. <u>See</u> Fazzari Decl. ¶¶ 34, 95, and 108.
        Even assuming that Fazzari had timely and properly made a Rule 56(d) motion – which he did not – the Court would still reject his request for more discovery because "the enormous length of every step of the proceedings in this case militate[s] against any more continuances." <u>Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.</u>, 118 F.3d 955, 963 (2d Cir. 1997). <u>See also</u> <u>Trebor Sportswear Co. v. Limited Stores, Inc.</u>, 865 F.2d 506, 511 (2d Cir. 1989) (affirming the denial of request for further discovery as "appellants had ample time to conduct discovery").

responses[8], do not make the necessary showing that defendants had an obligation to produce or preserve specific documents or that they failed to do so with a culpable state of mind. <u>See</u> <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 107 (2d Cir. 2002). As has previously been explained to Fazzari on numerous occasions, defendants were not responsible for the destruction of documents caused by Hurricane Sandy, and, as we informed Fazzari ten days after discovery closed, he "has not established that the defendants have failed to produce any responsive documents that are in their possession, custody, or control," Order, ECF No. 163. Moreover, while he complains of the destruction of personnel files of other CPLP attorneys, he has not sufficiently articulated the relevance of such files given that they relate to attorneys who are either not identified as comparators or who Fazzari admits were competent. <u>See</u> CPLP 56.1 Stmt. ¶ 57 ("I'm not saying any of them are bad attorneys. Please don't misunderstand what I'm saying. I'm saying that I was at least as qualified, if not more qualified . . . ."); <u>see also</u> <u>Residential Funding</u>, 306 F.3d at 107. For these reasons, plaintiff has failed to meet his burden and the Court denies his requests for adverse inferences wholesale.[9]

---

[8]    <u>See, e.g.</u>, CPLP 56.1 Stmt. ¶ 21 ("CPLP destroyed and with-held [sic] relevant documents and Plaintiff requests an adverse inference that the documents would show the falsity of CPLP's statements")).

[9]    Plaintiff's naked assertions that defendants violated unspecified provisions of federal and New York WARN laws and EEOC regulations concerning

Having now addressed the sufficiency of Fazzari's responses to defendants' 56.1 statements and the merits of his many objections and requests, we proceed to a summary of the factual record before the Court.

### III. **FACTUAL BACKGROUND**[10]

#### A. **Parties**

Plaintiff Vincent Fazzari is an attorney with over 30 years of experience practicing intellectual property law, most recently as counsel at the inactive law firm CPLP. Fazzari holds several advanced degrees, including a B.S. Ch.E. from the New Jersey Institute of Technology, a Juris Doctor from Seton Hall University Law School, and an L.L.M. in Trade Regulation from New York University School of Law. Fazzari Decl. ¶ 1. He is a member of the bars of New York and New Jersey and is

---

employers' maintenance of records, raised for the first time in the filing of his opposition briefs, have no bearing on his discrimination claims and are plainly insufficient to entitle plaintiff to any adverse inference.

[10] In addition to the parties' 56.1 statements and responses and the previously cited Fazzari Declaration, the factual background is also drawn from the declarations of David W. Garland ("Garland Decl."), ECF No. 179; Elaine Rinaldi Bailey ("Bailey Decl."), ECF No. 180; Martin B. Pavane in Support of Cozen's Motion for Summary Judgment ("Pavane's Cozen Decl."), ECF No. 181; Martin B. Pavane in Support of CPLP's Motion for Summary Judgment ("Pavane's CPLP Decl."), ECF No. 189; Felice B. Ekelman ("Ekelman Decl."), ECF No. 193; Vincent Fazzari as to Exhibits ("Fazzari Document Decl."), ECF No. 212; David W. Garland Supplemental ("Supplemental Garland Decl."), ECF No. 232, and attached exhibits.

Fazzari's belated and perfunctory request to have his sworn declaration treated as a 56.1 counterstatement is denied. Moreover, to the extent that Fazzari's declaration is inconsistent with his prior deposition testimony, the Court will rely solely on his prior deposition testimony. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony.").

admitted to practice in federal courts in the District of New Jersey, the Southern and Eastern Districts of New York, and the Federal Circuit Court of Appeals in Washington, D.C.  Id.

Defendant CPLP was an intellectual property law firm in New York City founded by Thomas Pontani, Lance Lieberman, and non-party Mike Cohen in 1985.[11]  CPLP 56.1 Stmt. ¶¶ 1–2.  From 2009 to 2011, defendants Pontani, Lieberman, Pavane, Thomas Langer, and Edward Weisz were the five equity partners at the firm.  Id. ¶ 3.  Defendant Cozen is a separate law firm "with more than 700 attorneys in 25 cities across two continents, and has nationally recognized practices in litigation, business law, and government relations."  Cozen 56.1 Stmt. ¶ 9.

### B.  Fazzari's Employment

Prior to joining CPLP, Fazzari had worked as a patent attorney for approximately 20 years at four different law firms.  Fazzari Decl. ¶¶ 9–13.  He submitted an application for employment to CPLP in 1996, and Cohen, Pontani, Lieberman, and Pavane, among others, interviewed and ultimately hired him as an associate in May of 1997.  Id. ¶¶ 16–18.

Although at the outset of his employment Fazzari was assigned a mix of patent prosecution and litigation work, Pontani and Pavane informed him that he would no longer be

---

[11]    The firm was founded as "Cohen, Pontani & Lieberman" before the fourth and final named partner, Martin Pavane, joined the firm in 1992.  Fazzari Decl. ¶ 15.

receiving prosecution assignments in November of 2004.[12]  Id. ¶
30.  Pontani testified that one of primary reasons for shifting
prosecution work away from Fazzari was that Pontani had received
complaints from clients about Fazzari, with at least one client
(Mannesmann) going so far as to explicitly direct Pontani not to
staff Fazzari on any of that client's matters going forward.
Ekelman Decl. Ex. G at 73:8-74:13.

In fact, at their depositions the CPLP partners were united
in their negative assessment of Fazzari's job performance, both
before and after the decision had been made to remove him from
prosecution matters.  According to the partners, Fazzari's
writing was inconsistent and often filled with typographical
errors; he managed his caseload poorly and sought extensions of
time without client permission; his office was noticeably
disorganized; he was difficult to reach and often non-
responsive; he hardly ever used email; he was unwilling or
unable to use a company-issued Blackberry device for
communication; he did not demonstrate an interest in bringing
clients to the firm; and he never wrote a professional article,
participated in an industry event, or secured an outside

---

[12]     Notwithstanding the fact that he was no longer actively staffed on
prosecution matters, Fazzari maintains that he completed the prosecutions
that he had already been assigned, Fazzari Decl. ¶ 30, and would occasionally
be given prosecution work by a non-equity partner, id. ¶ 79.  Fazzari
continued to receive invitations to the CPLP in-house lunch for prosecutors
until some point in 2009.  Id. ¶ 42.

speaking engagement.  <u>See</u> CPLP 56.1 Stmt. ¶¶ 26–29, 31–33, 35–38, 41, 42.

Fazzari disputes some but not all of these assessments. For example, Fazzari does not dispute that Mannesmann directed Pontani to remove Fazzari from one of their prosecution matters because they were dissatisfied with his work.  CPLP 56.1 Stmt. ¶ 30.  Fazzari admits that he did, on at least one occasion, take an extension without client or partner approval.  <u>Id.</u> ¶ 29. Fazzari does not dispute that his work often contained typographical errors, merely explaining that such mistakes may have been attributable to old technology or poor secretarial assistance.  <u>Id.</u> ¶ 28.  And he conceded at his deposition that he never wrote a professional article or secured external speaking engagements, <u>id.</u> ¶¶ 36, 42, and that he rarely sent emails because his "typing speed is maximum maybe of 12 to 15 words per minute on a good day."[13]  Ekelman Decl. Ex. A at 267:22-25.  Fazzari does not dispute that his office was "crowded" and in such a state that at least one CPLP equity partner felt compelled to request that Fazzari "do something about [his] office."  Fazzari Decl. ¶ 70.  Finally, with respect to client development, Fazzari takes responsibility for setting in motion the sequence of events that resulted in CPLP's hiring

---

[13]    While Fazzari claims that he practiced his typing "on occasion," Fazzari Decl. ¶ 47, he concedes elsewhere that he "typed very little" in his time at CPLP, <u>id.</u> ¶ 80.

of Thomas Langer, but does not dispute that he never obtained a client himself or showed any interest in doing so. CPLP 56.1 Stmt. ¶ 41.

According to Fazzari, during his tenure at CPLP, partners made three comments "that [were] direct with respect to the question of age." Ekelman Decl. Ex. A at 208:11–13. First, on three (or possibly four) occasions, Pavane referred to Fazzari as "young man." Id. at 207:4–11. Fazzari could not recall the context of the remarks. Second, at some point in either 2009 or 2010, Pontani entered Fazzari's office and told Fazzari he was relying on "old" caselaw, emphasizing the word "old." Id. at 208:2–10. The parties appear to agree that Pontani was referring to Fazzari's citation to the case In re Petering, 301 F.2d 676, 681 (C.C.P.A. 1962), which plaintiff admits he mentioned to Pontani "a number of times." Fazzari Decl. ¶ 78. Finally, within the same timeframe, Fazzari testified that he, Pontani, and Lieberman

> were walking from Fifth Avenue towards Sixth Avenue [to get lunch.] And I said to Thomas and Lance, 'I would like to get some training to do computerized legal research.' And they both instantaneously – the Rockettes would have been proud of the precision – shouted, 'No.' And then Thomas said, 'Let the younger attorneys do it.' And then Lance said, 'Yea, let the younger guys do it,' or 'let the younger attorneys do it.'

Ekelman Decl. Ex. A at 207:16-24. Fazzari did not follow up with Pontani or Lieberman about his request for training, nor

did he reach out to anyone else at the firm or a legal research platform like Westlaw or Lexis to ask if there was training available.[14]  Id. at 213:2–214:25.  Fazzari had twice before been offered legal research training in the early 2000s, but claims that he could not attend because of prior obligations.  He admits that he never made any effort to re-schedule the trainings for a more convenient time.  Id.

Fazzari claims that he had certain medical conditions and that two of the CPLP partners became aware of these conditions during the course of his employment.  Fazzari Decl. ¶¶ 49–50. At some point in 2010, Fazzari was asking Pontani about a heart procedure that Pontani had undergone, and in the course of that conversation Fazzari told Pontani that he also "had a heart rate problem which, from what [he understood], might require [him to] undergo an ablation procedure."  Id. ¶ 49.  Around the same time, Fazzari claims he informed Pavane about the same heart issue "and a thyroid condition," and that Pavane responded by asking "so how does this affect me?"  Id. ¶ 50.  For their part, Pontani and Pavane denied knowledge of Fazzari's disabilities at their depositions and Fazzari did not question the other three equity partners on the topic.  CPLP 56.1 Stmt. ¶ 54.

---

[14]     Moreover, Fazzari does not genuinely dispute that junior attorney Darren Mogil billed at a lower hourly rate and was a satisfactory researcher (in contrast to Fazzari, who had never performed any computerized legal research on Westlaw or Lexis).  See CPLP 56.1 Stmt. ¶¶ 48, 49; see also Fazzari Document Decl. Ex. 2 (chart listing Mogil and Fazzari's respective billing rates as of January 1, 2011).

Fazzari also testified that CPLP refused to provide certain "services, when apparently other attorneys were getting them." For example, "every time [his] computer got changed . . . USPQ was missing and had to be put on later," referring to a patent research program called the United States Patent Quarterly that he used "from time to time." Ekelman Decl. Ex. A at 208:16-24. Fazzari, who had a very limited capacity to type, also declares that he once requested voice recognition software so that he could dictate drafts of documents rather than have his secretary type them out, but was denied by the CPLP office manager because she did not think the voice recognition programs worked well. Fazzari Decl. ¶ 47.

Fazzari was never elected to partnership at CPLP; his most senior title at the firm was either "senior associate" or "senior counsel." Cozen 56.1 Stmt. ¶ 3.

### C. CPLP, Cozen, and Fazzari's Termination

In early December of 2009, a Cozen partner contacted Pontani to gauge CPLP's interest in moving its practice to Cozen. CPLP 56.1 Stmt. ¶ 9. At the time, CPLP was experiencing a decline in revenue from its litigation group and its equity partners were concerned about the firm's long-term viability. Cozen 56.1 Stmt. ¶¶ 23-24. Pontani responded positively to Cozen's inquiry, and he, along with Pavane, met with representatives of Cozen on December 8, 2009 to further discuss

CPLP's interest in the proposal. Id. ¶ 21. At the meeting, Pontani and Pavane indicated that they were receptive to bringing over less than all of their attorneys in the event that a deal was reached. Id. ¶ 22. In early January 2010, Cozen "began to gather publicly available information about CPLP and its attorneys," id. ¶ 26, and Pavane sent Cozen preliminary revenue and expense data and information regarding CPLP's top ten clients, id. ¶ 28. None of the information gathered by Cozen or shared by CPLP included reference to Fazzari's age or alleged disability. Id. ¶¶ 27–28.

On January 18, 2010, the five CPLP equity partners met with a number of Cozen attorneys. At the meeting, the CPLP partners provided an overview of their practices and discussed the firm's financial situation. Id. ¶ 31. They reiterated that CPLP's litigation practice had slowed down in 2009 and that, while they employed twenty-nine (29) attorneys, they did not intend to bring all of them to Cozen. Id. ¶ 32. Fazzari was not mentioned during the January meeting. Id. ¶ 33. The next day, Cozen member William Rosoff spoke with Pavane and questioned him regarding the decline in CPLP's litigation revenue. According to Rosoff, Pavane "recognized that it would only make sense to make a move with the number of lawyers that the revenues justified." Id. ¶¶ 34–36.

Over the next few months, CPLP continued to provide Cozen with financial information, none of which pertained to Fazzari's age or alleged disability.  Id. ¶¶ 37–38.  On April 20, 2010, CPLP sent Cozen a list of attorneys who they planned to bring to Cozen if an agreement were reached, as well as the attorneys that they intended to let go.  Id. ¶¶ 39–40.  Fazzari was among the latter group of attorneys.

Discussions between CPLP and Cozen stalled before picking back up in May of 2011.  CPLP's 56.1 Stmt. ¶¶ 15–16; Cozen 56.1 Stmt. ¶ 41.  At some point in the interim, it was determined that nineteen (19) CPLP attorneys would join Cozen in the event that an agreement was reached.[15]  Cozen 56.1 Stmt. ¶ 32.  Once discussions had restarted and an agreement appeared imminent, the CPLP equity partners met to finalize the list of nineteen attorneys.  Cozen 56.1 Stmt. ¶ 47.  The partners decided that they would invite all five non-equity partners and all seven of their patent prosecution associates, which left room for two non-partner litigation attorneys.  CPLP 56.1 Stmt. ¶ 20.  The CPLP equity partners selected Marilyn Neiman (57 years of age at the time of selection) and Darren Mogil (35 years of age).[16]

---

[15]    The CPLP partners' testimony is inconsistent as to whether this figure was a product of joint discussions between CPLP and Cozen or a dictate given by Cozen to CPLP.  See CPLP 56.1 Stmt. ¶ 17.

[16]    Plaintiff had previously alleged that Neiman was 62 years of age and Mogil was 38, see AC ¶ 36, but now asserts that Neiman was in fact 57, citing a deposition exhibit that he does not provide to the Court, and that Mogil was 35, citing no evidence whatsoever.  See CPLP 56.1 Stmt. ¶ 58; Pl.'s CPLP

CPLP 56.1 Stmt. ¶ 21. Cozen played no role in CPLP's decision to exclude Fazzari (or others) from the group of CPLP attorneys that would be joining Cozen. Cozen 56.1 Stmt. ¶¶ 45–46.

On June 14, 2017, the CPLP equity partners and Cozen reached a formal agreement, which (1) confirmed that Cozen would not acquire any of CPLP's assets or liabilities; (2) permitted CPLP to retain all its accounts receivable and the proceeds of its uncollected billable hours; (3) did not include the transfer of any of CPLP's liquid or tangible assets to Cozen; (4) required CPLP to maintain, at its sole cost and expense, professional liability insurance for claims related to its business activities prior to its dissolution and termination, including tail coverage for CPLP and its former lawyers. The agreement further provided that CPLP would cease the active practice of law, with its remaining functions limited to, inter alia, the collection of accounts receivable and satisfaction of CPLP's obligations and liabilities. Cozen 56.1 Stmt. ¶¶ 51–60.

Fazzari was informed of the final decision to terminate his employment on June 17, 2011. Cozen 56.1 Stmt. ¶ 65. At the time, he was 65 years of age, Pontani was 66, Langer was 64, Lieberman was 62, Pavane was 60, and Weisz was 47. CPLP 56.1 Stmt. ¶¶ 59–64.

---

Opp. Br. at 24, ECF No. 215. Nevertheless, for purposes of these motions, the Court takes Fazzari at his word and assumes without finding that Neiman was 57 years of age at the time and Mogil was 35.

## IV.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this context, "[a] fact is 'material' when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted).  "In assessing the record to determine whether there is [such] a genuine issue [of material fact] to be tried, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

On a motion for summary judgment, "[t]he moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'"  F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Where that burden is carried, the non-moving party "must come forward with specific evidence

demonstrating the existence of a genuine dispute of material fact." Id. (citing Anderson, 477 U.S. at 249). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly and Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).

The Second Circuit has emphasized "the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent." Gorzynski, 596 F.3d at 101 (quoting Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008)). However, "[t]hough caution must be exercised in granting summary judgment where intent is genuinely in issue, summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994) (internal citation omitted). Indeed, it is well established that "summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001); see also Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination

cases than to commercial or other areas of litigation."), <u>cert. denied</u>, 474 U.S. 829.

### B. Age Discrimination Under the ADEA

Under the ADEA, an employer may not "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "An ADEA plaintiff's ultimate burden is to prove by a preponderance of the evidence that age was the 'but-for' cause of the challenged adverse employment action, rather than merely a motivating factor in the decision." <u>Chapotkat v. Cty. of Rockland</u>, 605 F. App'x 24, 25 (2d Cir. 2015) (internal quotation marks omitted).

Claims of age discrimination under the ADEA are analyzed under the three-step burden-shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), as modified by <u>Gross v. FBL Financial Services</u>, 557 U.S. 167 (2009). <u>See</u> <u>Mikinberg v. Bemis Co.</u>, 555 F. App'x 34, 35 (2d Cir. 2014) (summary order). Under this framework, plaintiff must establish a prima facie case of age discrimination by showing that he was "(1) within the protected age group; (2) qualified for the position; (3) discharged; and (4) that such discharge occurred under circumstances giving rise to an inference of discrimination." <u>Carlton v. Mystic Transp., Inc.</u>, 202 F.3d 129, 134 (2d Cir. 2000).

If plaintiff can establish a prima facie case, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action." Gorzynski, 596 F.3d at 106 (internal quotation marks omitted). "If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's explanation is pretext for discrimination." Chapotkat, 605 F. App'x at 26. "At this third step in the analysis, following Gross, the ADEA plaintiff must show that age was a 'but-for' cause of the employer's action. Thus, to resist summary judgment on an ADEA claim successfully, a plaintiff must demonstrate that a reasonable jury could conclude by a preponderance of the evidence that the employer's explanations are pretextual and that, but for the plaintiff's age, the employer would not have taken the action it did." Id. (internal citation omitted). In other words, "the plaintiff must prove not only that the proffered nondiscriminatory reason was pretextual but also that the discrimination was the real reason." McDonald v. United States Postal Serv. Agency, 547 F. App'x 23, 25 (2d Cir. 2013) (internal quotation marks omitted).

## 1. ADEA Claims Against Cozen

We first address plaintiff's claims that he was wrongfully discharged by Cozen because of his age in violation of the ADEA. A necessary predicate to a finding of wrongful discharge under the ADEA is the existence of an employer-employee relationship

between plaintiff and defendant.  See Heller v. Consol. Rail Corp., 331 F. App'x 766, 768 (2d Cir. 2009) (summary order) (stating that the provisions of the ADEA "apply only to discriminatory practices by an employer.") (emphasis added). While Fazzari now concedes that "Cozen never employed [him] in the common law sense," he continues to speculate that the firm "may have been an employer under ADEA and/ or, The ADA [sic]." Cozen 56.1 Stmt. ¶ 11.  The evidence contradicting Fazzari's hypothesis is overwhelming.  Fazzari never performed any work on behalf of Cozen.  Id. ¶ 12.  Cozen never paid Fazzari any form of compensation, never provided him with any employment-related benefits, and never made any compensation or personnel-related decisions regarding him.  Id. ¶¶ 13–15.  Moreover, Cozen never had any ownership interest in Fazzari's actual employer CPLP, id. ¶ 16, and never had the ability to set the schedule of CPLP employees, affect the terms and conditions of employment of CPLP employees, or control the manner in which CPLP employees completed their work, id. ¶ 17.  Cozen also played no role in CPLP's decision to exclude Fazzari and others from the group of CPLP attorneys that would be joining Cozen.  Id. ¶¶ 46–47.

Given these undisputed facts – which were either known to Fazzari at the time of his termination or readily apparent following discovery – plaintiff's failure to voluntarily withdraw his claims against Cozen is frankly indefensible.

Regardless, it is crystal clear that there was no employer-employee relationship between Cozen and Fazzari, see O'Connor v. Davis, 126 F.3d 112, 115 (2d Cir. 1997) (holding that "[w]here no financial benefit is obtained by the purported employee from the employer, no plausible employment relationship of any sort can be said to exist" (internal quotations omitted)), and therefore the Court has no difficulty concluding that Cozen is entitled to a grant of summary judgment as to the ADEA claims asserted against it.[17]

### 2. First Step: Prima Facie Case

Turning to Fazzari's ADEA claims against the CPLP defendants, we begin with the first step of the McDonnell Douglas framework. Given the minimal burden of establishing a prima facie case, see McGuinness v. Lincoln Hall, 263 F.3d 49,

---

[17] Fazzari raises two half-baked textual arguments in an attempt to salvage his claims. Neither is persuasive. First, Fazzari argues that the statute defines an employer as "a person . . . who has twenty or more employees . . . [and] any agent of such a person," 29 U.S.C. § 630(b), and Cozen was such an agent. There is no evidence in the record supporting the notion that Cozen was acting on behalf or at the behest of CPLP, and even if there were the reference to "agent" in the ADEA "was merely intended to create respondeat superior liability against employers for the acts of their agents," not attach independent liability to the employer's agent. Leykis v. NYP Holdings, Inc., 899 F. Supp. 986, 990 (E.D.N.Y. 1995). Fazzari's second argument is even more far-fetched. Cozen, according to Fazzari, discriminated against him as an "employment agency," defined in 29 U.S.C. § 630(c) as "any person regularly undertaking with or without compensation to procure employees for an employer . . . ." 29 U.S.C. § 630(c). The mere act of hiring employees does not transform Cozen into an employment agency under the ADEA. The argument fails for the additional reason that plaintiff's opposition brief marks the first time he alleges a potentially discriminatory employment agency practice, which is distinct from a claim for wrongful discharge by an employer. Compare 29 U.S.C. § 623(a) with 29 U.S.C. § 623(b). The Court therefore need not consider plaintiff's novel theory as "it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion." Thomas v. Egan, 1 F. App'x 52, 54 (2d Cir. 2001) (summary order).

53 (2d Cir. 2001), and our obligation to view the facts in the light most favorable to plaintiff, for purposes of the present motions we assume, without holding, that Fazzari has made out a prima facie case of discrimination. See Howard v. MTA Metro-North Commuter R.R., 866 F. Supp. 2d 196, 205 (S.D.N.Y. 2011) ("Despite the elaborate process set up in McDonnell Douglas, Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a prima facie case and skip to the final step in the McDonnell Douglas analysis, as long as the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action.") (citing cases); see also Morris v. Ales Grp. USA, Inc., No. 04 Civ. 8239 (PAC), 2007 WL 1893729, at *7 (S.D.N.Y. June 29, 2007). We therefore proceed to the next stage of the analysis and consider whether defendants have provided a legitimate, nondiscriminatory reason for plaintiff's discharge.

### 3. Second Step: Legitimate, Nondiscriminatory Reasons

The employer's burden at the second stage of the McDonnell Douglas framework "is one of production, not persuasion." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000). "The court is not to pass judgment on the soundness or credibility of the reasons offered by defendants, so long as the reasons given are 'clear and specific.'" Schwartz v. York College, No. 06 Civ. 6754 (RRM), 2011 WL 3667740, at *6

(E.D.N.Y. Aug. 22, 2011) (quoting Mandell v. Cnty. of Suffolk, 316 F.3d 368, 381 (2d Cir. 2003)). Here, CPLP defendants proffer that, "[i]n addition to CPLP's five non-equity partners, the equity partners decided to invite all seven of the patent prosecutors because that practice was doing well and all of the patent prosecutors were needed to meet the workload." CPLP 56.1 Stmt. ¶ 20. "That left room to invite two litigation attorneys to join Cozen, and the CPLP equity partners selected Marilyn Neiman and Darren Mogil, who they believed to be CPLP's strongest non-partner litigation attorneys." Id. ¶ 21. Because defendants have met their burden by adequately articulating a legitimate, nondiscriminatory rationale for not selecting plaintiff for the position at Cozen, the burden shifts back to the plaintiff for the third stage of the analysis.

### 4. Third Step: Discrimination as the "But-For" Cause

At this final stage, the Court examines whether plaintiff has produced evidence from which a rational jury could find "not only that the proffered nondiscriminatory reason was pretextual but also that the discrimination was the real reason [for plaintiff's discharge]." McDonald, 547 F. App'x at 25.

As described supra, it is undisputed that the CPLP partners had several legitimate, age-neutral reasons for concluding that Fazzari's job performance was unsatisfactory. The partners received complaints about his work product directly from

clients, Fazzari took at least one extension without client or partner approval, and his writing frequently contained mistakes. Moreover, he eschewed trainings, showed no interest in client development, and did not participate in industry events. Perhaps most glaringly, Fazzari refused to make use of even the most elementary forms of office technology, rarely communicating via email and never learning to type at an efficient pace. Fazzari may consider these criticisms trivial or attributable to causes outside of his control, but "[t]o demonstrate that an employer's proffered legitimate reason for termination is a pretext for discrimination, a plaintiff must do more than conclusorily dismiss the reason as petty . . . [he] must adduce admissible evidence that the reason is false." Soderberg v. Gunther Int'l, Inc., 124 F. App'x 30, 32 (2d Cir. 2005); see also Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) ("[I]t is not the function of a fact-finder to second-guess business decisions . . . ."); Shub v. Westchester Cmty. Coll., 556 F. Supp. 2d 227, 252 (S.D.N.Y. 2008) ("The Court is not a 'super employer' under the ADEA . . . ."). Plaintiff plainly fails to do so here.[18]

---

[18]    Although the Court relies solely on admissible (and undisputed) evidence of Fazzari's unsatisfactory job performance in reaching its conclusions, it does not go unnoticed that Fazzari's utter disregard for deadlines, inartful and poorly-proofread submissions to the Court, and proven incapacity to register for the Court's electronic filing system (in violation of a directive from the Court, no less, see ECF No. 79 at 28:8-29:11), are all entirely consistent with the CPLP partners' perceptions of Fazzari's ineptitude as a practicing attorney.

Having effectively conceded his shortcomings as an employee, Fazzari makes much of the CPLP partners' three allegedly age-related remarks. None, however, are probative of the partners' motivations for taking the adverse employment action at issue. "'[V]erbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff.'" Moore v. Verizon, No. 13 Civ. 6467 (RJS), 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016). In making such a determination, the Court looks to the content of each remark and the context in which it was made. See Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010); Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 115 (2d Cir. 2007). Here, there is no causal nexus linking the cited remarks to Fazzari's discharge, no evidence that the comments were uttered in the context of an employment decision, and, to the extent that the statements can even be construed as age-related, the content of each is either ambiguous or relatively benign. The fact that the speakers were all within 5 years of age of Fazzari – Pontani was, in fact, one year *older* than Fazzari - further diminishes their value as evidence of discriminatory intent. See Grant v. New York Times Co., No. 16 Civ. 03175 (PKC), 2017 WL 4119279, at *7 (S.D.N.Y. Sept. 14, 2017) ("A member of the same protected group may hold a

discriminatory animus against other members of that group but, depending upon the context, the inference may become implausible."). The only consideration that conceivably cuts in plaintiff's favor is the fact that all of the remarks were made by CPLP partners that ultimately determined Fazzari's fate, but "stray remarks, even if made by a decision maker, do not constitute sufficient evidence to [support] a case of employment discrimination." <u>Tubo v. Orange Reg'l Med. Ctr.</u>, 690 F. App'x 736, 739–40 (2d Cir. 2017) (quoting <u>Danzer v. Norden Sys., Inc.</u>, 151 F.3d 50, 56 (2d Cir. 1998)).

Fazzari's other theory of discrimination – that CPLP began marginalizing him in the early 2000s in an insidious attempt to discharge him years later – is plainly insufficient to raise a triable issue of fact. None of the discrete actions cited by Fazzari in support of his argument, such as CPLP's supposed failure to pre-load his new computers with USPQ software, bespeak a discriminatory animus. And there is no evidence that the reduction of the scope of Fazzari's responsibilities or his failure to receive a promotion to partner were in any way related to his age. Without such evidence, the mere fact of his reduced role at CPLP does not constitute evidence of discrimination. <u>See</u> <u>Boyle v. McCann-Erickson, Inc.</u>, 949 F. Supp. 1095, 1102 (S.D.N.Y. 1997) ("Plaintiff also feels he was given lesser responsibilities at different times in his career

with Defendant. However, this is not evidence of discrimination.").[19]

While, to be clear, neither the stray comments nor plaintiff's contrived claims of marginalization are sufficient to raise a triable issue of fact in this case, to the extent that they raise *any* inference of a discriminatory animus it is undermined by two significant realities. First, Pavane, Pontani, and Lieberman were named partners at the firm when they interviewed the 51-year-old Fazzari and hired him in May of 1997. "[W]here the [people] who made the decision to fire w[ere] the same [people] who made the decision to hire, it is difficult to impute to [them] an invidious motivation that would be inconsistent with the decision to hire." Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000) (internal citation omitted); see also Grant v. Roche Diagnostics Corp., No. 09 Civ. 1540 (JS/AKT), 2011 WL 3040913, at *10 (E.D.N.Y. July 20, 2011). Second, all five CPLP equity partners were themselves members of the same protected class as Fazzari, and four of the five

_____

[19]    To the extent that Fazzari argues that his relative superiority as a candidate for the position evinces a discriminatory intent, he does not come close to meeting the weighty burden of persuasion attendant to that method of proof. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) ("When a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer . . . the plaintiff's credentials would have to be so superior . . . that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'") (citations omitted).    There is no basis for inferring that he was "so superior" to the other two candidates considering that Fazzari himself concedes that neither Moglin nor Neiman were "bad attorneys," and that he was only "at least as qualified, if not more qualified" as them.    CPLP 56.1 Stmt. ¶ 57.

partners were either older than Fazzari or within five years of his age.  See <u>Giordano v. Gerber Sci. Prods.</u>, No. 99 Civ. 0712, 2000 WL 1838337, at *7 (D. Conn. Nov. 14, 2000) ("Where the decision-makers are also in the protected age group an inference may be drawn that there is no age-based animus."), <u>aff'd</u> 24 Fed. Appx. 79 (2d Cir.2000); <u>Starr v. Legal Aid Soc'y</u>, No. 96 Civ. 6888, 1998 WL 477733, at *3 (S.D.N.Y. Aug. 14, 1998) (stating that an inference of age discrimination was "implausible" when the decision-makers "were very close in age to plaintiff").

Given Fazzari's clear and uncontroverted deficiencies as an employee, the scant evidence of discriminatory animus, and the simple fact that he was hired and fired by CPLP partners of roughly his same age, no reasonable jury could find that the CPLP partners passed over plaintiff for a position at Cozen because of his age.  For these reasons, the Court grants the CPLP defendants' motion for summary judgment as to plaintiff's ADEA claims.

## C.  Disability Discrimination Under the ADA

Fazzari makes a perfunctory argument that there is a genuine issue of material fact with respect to his ADA claims because Pavane and Pontani had knowledge of his heart and thyroid condition at the time of the adverse employment action. Even assuming Fazzari's alleged conditions are properly considered disabilities under the ADA, "the mere fact that an

employer is aware of an employee's impairment is insufficient to demonstrate . . . that that perception caused the adverse employment action," Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 153 (2d Cir. 1998), and Fazzari adduces no other evidence that he was not selected to join Cozen because of these conditions.[20]  Indeed, when asked why he was not brought over to Cozen at his deposition, Fazzari testified that it was because of his age, not disability:

> Q: Do you know why you were not brought over to Cozen O'Connor?
>
> A:  I believe it was age.
>
> Q: So your understanding is you were not brought over [to Cozen] because of age discrimination?
>
> A: Right.

CPLP 56.1 Stmt. ¶ 53.

While it is unclear "whether ADA discrimination claims may proceed on a mixed-motive theory after the Supreme Court's decision in [Gross]," Forrester v. Prison Health Servs., Inc., 651 F. App'x 27, 28-29 (2d Cir. 2016) (internal quotation marks omitted), we need not resolve the issue here given the complete

---

[20]    Fazzari concludes one of his briefs in opposition by remarking that the alleged disability discrimination "goes beyond selection for a position," citing his sworn statement to the EEOC that he was not allowed to participate in a trial in April 2011.  See Pl.'s CPLP Opp. Br. at 30.  He points to no evidence that the decision was a product of any CPLP partner's perception of his alleged conditions and absent such evidence his exclusion is not probative of discriminatory animus.  See Boyle, 949 F. Supp. at 1102.

absence of evidence that Fazzari was terminated on account of his disability.[21]

### D. NYSHRL and NYCHRL Claims

As there are no longer any federal claims in this action, it is within the Court's discretion to exercise supplemental jurisdiction over plaintiff's remaining state and municipal law age and disability discrimination claims. Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262-63 (2d Cir. 2006). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

Here, however, because plaintiff's federal discrimination claims and the NYSHRL claims "arise from the same set of operative facts and because the same legal standards apply to both, requiring Defendants to re-litigate [the NYSHRL] claims in state court would be neither fair nor convenient, nor would it serve the interest of judicial economy." Vuona v. Merrill Lynch

---

[21] An employer-employee relationship must exist to sustain a wrongful discharge claim under the ADA. See Heller, 331 F. App'x at 768 (2d Cir. 2009) (summary order). For the same reasons described supra, the Court grants Cozen's motion for summary judgment as to the ADA claims asserted against it.

& Co., 919 F. Supp. 2d 359, 393 (S.D.N.Y. 2013). See also
Gonzalez v. Carestream Health, Inc., 520 Fed. Appx. 8, 10 n.1
(2d Cir. 2013); Burton v. Metro. Transp. Auth., 244 F. Supp. 2d
252, 257 (S.D.N.Y. 2003). We therefore exercise supplemental
jurisdiction over plaintiff's NYSHRL claims and grant summary
judgment to all defendants on those claims.

However, a more liberal standard applies to claims brought
under the NYCHRL, Mihalik v. Credit Agricole Cheuvreux N. Am.,
Inc., 715 F.3d 102, 109 (2d Cir. 2013), one with "which the [New
York] state courts are more familiar." Vuona, 919 F. Supp. 2d
at 394. Consequently, "[c]ourts in this District routinely
decline to exercise supplemental jurisdiction over a plaintiff's
NYCHRL claims after dismissing all federal claims," even when
maintaining jurisdiction over analogous NYSHRL claims. Espinoza
v. New York City Dep't of Transportation, 304 F. Supp. 3d 374,
391 (S.D.N.Y. 2018). We conclude that the balance of factors
points towards declining supplemental jurisdiction and dismiss
plaintiff's NYCHRL claims without prejudice to re-filing in
state court. In so holding, the Court is mindful that the
extensive discovery already taken by the parties in this case is
no doubt sufficient to enable these claims to be evaluated in
state court without any additional discovery. See Murray v.
Visiting Nurse Servs., 528 F. Supp. 2d 257, 280–81 (S.D.N.Y.
2007) (collecting cases).

## V. CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are granted as to plaintiff's ADEA, ADA, and NYSHRL claims. Because the Court declines to exercise supplemental jurisdiction over plaintiff's NYCHRL claims, those claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate this case and any motions pending therein.

**SO ORDERED.**

Dated: New York, New York
       March *19*, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

A copy of the foregoing Order has been mailed on this date to the following:

Vincent M. Fazzari
550 Central Avenue
Harrison, NJ 07029